IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ELVA EURE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:11-cv-00190 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KROGER LIMITED PARTNERSHIP I, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

This slip-and-fall case is presently before the court on the defendant's motion for summary judgment. For the reasons set forth below, the court will grant the defendant's motion.

**I.      Factual and Procedural Background**

On June 18, 2010, Elva Eure ("Eure" or "plaintiff") entered a grocery store owned by Kroger Limited Partnership I ("Kroger" or "defendant"), located at 72 Kingston Drive, Daleville, Virginia. (Docket No. 1-3 at 2–3.) Eure alleges that, while walking through the store with two of her children, she slipped and fell in a wet area on the floor and sustained bodily injuries as a result of the fall. (Id. at 3.) Eure then initiated this negligence action in state court against the defendant, seeking $500,000.00 in compensatory damages. Kroger then removed the action to federal court on the basis of diversity jurisdiction. (Docket No. 1.) The defendant has now filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending that the plaintiff cannot establish a prima facie case of negligence. (Docket No. 17.) In her response, the plaintiff urges the court to deny the motion based on the existence of genuine issues of material fact. (Docket No. 21.) The court heard argument on the motion on March 6, 2012. The matter is therefore ripe for disposition.

## II. Discussion

### 1. Legal Standard

In considering a motion for summary judgment under Federal Rule of Civil Procedure 56, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). The court may grant summary judgment only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). For a party's evidence to raise a genuine issue of material fact that avoids summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 2. Evidence in the Record

The record in this case reveals that, around 8:00:00 on June 18, 2010, Michael Ripley ("Ripley"), an employee of the Daleville Kroger, noticed a large accumulation of water on the floor of the store in the middle of a large main aisle. (Docket No. 21-1 at 8.) Ripley stated in his deposition that the water originated from a spill. (Id.) According to Ripley, the water on the floor spanned a "[r]eal big" area, the size of approximately two tables. (Id. at 9.) Ripley cleaned up the spill, using paper towels and a mop, and placed a large yellow warning cone in the middle of the spill area. (Id. at 10–13; Docket No. 18-2.) Ripley acknowledged in his deposition that the floor was not completely dry, but was still moist, after he finished mopping up the spill. (Docket No. 21-1 at 12–13.) A store surveillance video recording shows that Ripley placed the warning cone at approximately 8:14:41 and that he left the spill area at approximately 8:15:28. (Docket No. 18-2.) The yellow warning cone stood 36 inches high, was 12 inches by 12 inches

at its base, and featured the following words in large black type: "Caution" and "Wet Floor[.]" (Docket No. 18-4 at 2; Docket No. 18-14.)

The video shows that, between the time that Ripley left the spill area after placing the cone and the time that Eure fell (approximately 8:36:26), a time period of approximately twenty-one minutes, numerous people walked near the cone without falling. (Docket No. 18-2.) More specifically, the video shows that eleven people walked in the exact area where Eure fell during that 21-minute period. (Id.) Eure first appears in the video at approximately 8:27:28 and, between that time and the time of her fall, she and her two children walked past the yellow warning cone at least four times. (Id.)

As stated above, Eure's fall occurred at approximately 8:36:26. She was wearing flip-flops at the time that she slipped and fell. (Docket No. 18-1 at 40.) In her deposition, Eure stated that she did not notice a yellow warning cone at any time prior to, or at any time after, her fall. (Id. at 21, 24.) She acknowledged that she had an unobstructed view of the floor in the area of the fall (id. at 31–32); however, Eure stated that the store "had moved stuff around" and she was attempting to locate certain items. (Id. at 17, 19.) The video shows that Eure and her two children were walking down a main aisle toward the spill area when she slipped and fell approximately several feet away from the warning cone. (Docket No. 18-2.) Eure conceded that she did not see exactly what she stepped in that precipitated her fall. (Docket No. 18-1 at 32, 50.) However, Eure asserted that:

> After I fell and I was laying there I seen where my foot had kind of slid, where I kind of skidded or slipped when I fell. And it was kind of like a little wet track with my foot and the print of my shoe kind of, if that makes sense. But I didn't see no water or just like a wet residue after I had fallen.

(Id. at 50.) Although she did not see what caused her to slip and fall, she stated that, after her fall, she saw "Kroger ladies" using paper towels to wipe up "quarter size puddles of water all

3

along the floor." (Id. at 32.) However, Eure clarified that the puddles of water that she noticed after the fall were not the cause of her fall, because the puddles were "off to the side" from the site of the fall. (Id. at 32, 35, 37.) Furthermore, the plaintiff stated that she did not see any Kroger employees wiping up puddles in the exact area of her fall. (Id. at 37.) Although, as explained above, Eure stated that she never saw a warning cone, she maintained that, after she fell, she noticed a small brown fold-out "wet floor sign . . . propped up against" a display approximately six or seven feet away from where she fell. (Id. at 24–27.)

Eure's fall was witnessed by at least two Kroger employees, Ripley and Kelly Doak ("Doak"). Furthermore, Eure's seventeen-year-old son, Cody Eure, witnessed his mother's fall, and denied in his deposition ever seeing a cone in the vicinity of the fall. (Docket No. 21-5 at 20–24.) In fact, Cody Eure alleged that Kroger employees retrieved a flat fold-out "[w]et floor sign" and placed it next to his mother only after she had fallen.[1] (Id.)

With respect to the location and amount of water that was observed on the floor after Eure's fall, Ripley stated that wiping up the moisture on the floor after Eure's fall required a "[w]hole lot" of paper towels. (Docket No. 21-1 at 20.) Ripley further stated that there were lots of "little puddle[s]" of water on the floor after the fall. (Id. at 20–21.) Another Kroger employee, Theresa Kelly ("Kelly"), affirmed that she saw liquid on the floor around the area of Eure's fall. (Docket No. 21-3 at 13.) In quantifying the amount of water on the floor after the fall, Kelly stated that the wet area "wasn't very small[,]" and was "definitely bigger than a few inches." (Id. at 14.) Cody Eure stated that, after his mother's fall, he saw four or five dime-sized puddles of water around the area of the fall. (Docket No. 21-5 at 29–30.) However, Doak stated that she did not observe any moisture on the floor after Eure's fall. (Docket No. 21-2 at 14.)

---

[1] The court notes that the video refutes this allegation. (Docket No. 18-2.)

4

As a result of her fall, the plaintiff alleges, she sustained serious injuries and has incurred continuing medical expenses related to those injuries. (Docket No. 1-3 at 4.)

3.  **Analysis**

Based on this series of events, the plaintiff instituted this negligence action against the defendant. In order to establish a negligence claim under Virginia law,[2] a plaintiff must satisfy four basic elements by a preponderance of the evidence: (1) duty, (2) breach, (3) causation, and (4) harm. Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000). The legal issues that arise in the summary judgment motion in this case implicate the duty and breach elements of the plaintiff's negligence claim.

Although, under Virginia law, a business owner is not an insurer of an invitee's safety, Franconia Assocs. v. Clark, 463 S.E.2d 670, 672 (Va. 1995), a business owner nonetheless owes a duty to exercise ordinary care toward invitees on its premises. Colonial Stores Inc. v. Pulley, 125 S.E.2d 188, 190 (Va. 1962); Whitfield v. Cox, 52 S.E.2d 72, 73–74 (Va. 1949). Whether a business owner satisfies this duty toward an invitee is measured by consulting the relevant standard of care. The standard of care applicable to slip-and-fall cases is well-settled in Virginia:

> In carrying out this duty [the store owner] was required to have the premises in a reasonably safe condition for [the customer's] visit; to remove, within a reasonable time, foreign objects from its floors, which it may have placed there or which it knew, or should have known, that other persons have placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner].

Rodgers v. Food Lion, Inc., 103 F.3d 119, 1996 WL 673802, at *1 (4th Cir. 1996) (per curiam) (unpublished table decision) (quoting Colonial Stores Inc., 125 S.E.2d at 190). Hence, as this passage indicates, the standard of care in this case required Kroger (1) to remove from its floor

---

[2]  Because this case is before the court on the basis of diversity jurisdiction, the court must apply the law of Virginia in this negligence action. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

5

within a reasonable time any hazardous condition that it created or of which it knew or should have known, and (2) to warn invitees of such a condition.

### a. Whether Kroger knew or should have known of the hazardous condition that allegedly caused Eure's fall

In order for Kroger to be adjudged negligent in this case, the plaintiff must first show that Kroger either created or was aware of, or should have been aware of, a hazardous condition on its floor. Eure has produced no evidence suggesting that Kroger created a hazardous condition on the floor. Hence, to defeat the motion for summary judgment, Eure must demonstrate that Kroger either had actual or constructive notice of a hazardous condition on the floor in time to remove it. See Rodgers, 1996 WL 673802, at *2 ("[T]he plaintiff need not prove that the defendant had actual notice of a hazardous object on its floor in time to remove it; it is sufficient for the plaintiff to prove constructive notice."). Regarding constructive notice, the Supreme Court of Virginia has stated: "If an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the defendant] had a duty to exercise reasonable care to avoid the genesis of the danger." Memco Stores, Inc. v. Yeatman, 348 S.E.2d 228, 231 (Va. 1986).

The defendant in this case contends that Eure has failed to point to any evidence in the record indicating that Kroger possessed either actual or constructive notice of a hazardous condition. To support this contention, the defendant cites numerous cases, several of which the court will examine below. In Winn-Dixie Stores, Inc. v. Parker, 396 S.E.2d 649 (Va. 1990), the plaintiff slipped on a bean on the floor in the produce section of a grocery store. In granting summary judgment in favor of the defendant, the Supreme Court of Virginia stressed that the plaintiff adduced no evidence showing how the bean arrived on the floor. Id. at 651. The court observed that it could not be inferred that a store employee who dry-mopped the floor shortly

6

before the accident must have missed the bean merely because the bean was present on the floor when the plaintiff fell. Id. "To countenance such an inference would ignore the likelihood that the bean found its way to the spot where [the plaintiff] fell as the result of some action taken by another customer after [the employee] finished mopping the produce section." Id.

In Rodgers, the plaintiff slipped in a puddle of water, which, according to the plaintiff, had pooled in the vicinity of a produce display counter containing crushed ice. Rodgers, 1996 WL 673802, at *1. Store personnel testified that they had seen crushed ice fall from the display on previous occasions when produce was removed from the display. Id. Store personnel further stated than an employee had spot-mopped the floor beside the display approximately one half-hour before the plaintiff's fall. Id. Applying Virginia law, the United States Court of Appeals for the Fourth Circuit concluded that Winn-Dixie controlled the outcome of the case, because the plaintiff produced no evidence showing how the crushed ice arrived on the floor. Id. at *2. More specifically, the plaintiff produced no evidence suggesting either that the store placed the ice on the floor or that the employee overlooked the ice when he mopped the floor prior to the fall. Id. The Fourth Circuit observed that "the puddle could have been the result of some action taken by another customer after the employee finished mopping the produce section." Id. Accordingly, the Fourth Circuit determined that, under Virginia law, the plaintiff failed to meet her burden of adducing evidence indicating that the store had either actual or constructive notice of the pooled water. Id.

In Brown v. Rose's Stores, Inc., 145 F.3d 1323, 1998 WL 230914 (4th Cir. 1998) (per curiam) (unpublished table decision), the plaintiff slipped and fell on a plastic tape dispenser. Applying Virginia law, the Fourth Circuit determined that the fact that store employees carried tape dispensers was too attenuated to suggest that an employee must have been responsible for the tape dispenser on which the plaintiff tripped and fell. Id. at *2. Furthermore, the Fourth

7

Circuit observed that the plaintiff adduced no evidence as to how long the tape dispenser laid on the floor before the fall. Id. Hence, the Fourth Circuit concluded that the plaintiff failed to produce evidence suggesting that the store had either actual or constructive notice of the hazardous condition.

After considering these, and the other, cases cited by the defendant in its brief, the court perceives a common thread running through these cases: To establish that a defendant had constructive notice of a hazardous condition, a plaintiff must adduce evidence suggesting both how the object arrived on the floor and for how long the object had been on the floor before the accident occurred. Furthermore, mere speculation or conjecture is insufficient to satisfy this burden. See, e.g., Murphy v. J.L. Saunders, Inc., 121 S.E.2d 375, 378 (Va. 1961) ("It is incumbent upon the plaintiff to show why and how the accident happened. If that is left to conjecture, guess or random judgment, the plaintiff is not entitled to recover."). Based on these overriding principles of Virginia negligence law, the defendant argues that Eure cannot establish that Kroger had either actual or constructive notice of any hazardous condition because the plaintiff cannot show how the quarter-sized puddles of liquid arrived on the floor. According to the defendant, it is unknown whether the puddles originated from another customer or even from Eure herself.

The court finds the defendant's arguments unpersuasive. Eure identifies evidence in the record suggesting that Kroger had both actual and constructive notice of the water on the floor. First, with respect to actual notice, Ripley testified that a large spill occurred in the area in which the fall later transpired. He mopped up the water and placed a warning cone in the middle of the spill area approximately twenty-one minutes before Eure's fall. Furthermore, he testified that the floor was still moist after he had mopped it and left the area. Ripley's deposition testimony establishes that Kroger, through one of its employees, likely had actual notice of the wet floor.

8

Second, with respect to constructive notice, the plaintiff has identified evidence as to how the wetness on the floor originated (through the spill and the subsequent mopping), and as to how long the wetness had existed on the floor before her fall (approximately twenty-one minutes). Hence, the cases cited by the defendant are distinguishable on their facts. Unlike the plaintiffs in those cases, the plaintiff in the instant case need not rely on mere speculation or conjecture to establish how the water arrived on the floor and for how long it laid there before the accident happened. Eure points to video and deposition evidence in support of her contention that the water arrived on the floor through the spill and the subsequent mopping and that the water pooled there for approximately twenty-one minutes prior to her fall. In contrast, the plaintiffs in the cases cited by Kroger could not identify any evidence relating to the genesis of the hazardous conditions beyond mere speculation or conjecture. Hence, Eure demonstrates that there is a genuine issue of material fact regarding whether Kroger had actual and/or constructive notice of a hazardous condition on its premises.[3]

### b. Whether Kroger adequately warned of the hazardous condition

However, merely showing that a business owner had actual or constructive notice of a hazardous condition is not sufficient to demonstrate liability. Instead, the plaintiff must demonstrate that the defendant acted unreasonably in response to the hazardous condition of

---

[3] Eure also contends that she can establish constructive notice through the rule of Austin v. Shoney's, Inc., 486 S.E.2d 285 (Va. 1997). In that case, the Supreme Court of Virginia stated:

> The plaintiff was not required to prove that Shoney's had actual notice of the dangerous condition of its floor. If the jury accepted the plaintiff's theory that the grease-like film was the result of improper cleaning methods, the hazardous condition was affirmatively created by the property owner. Thus, Shoney's is charged with constructive knowledge of the risk because it "had a duty to exercise reasonable care to avoid the genesis of the danger."

Id. at 288 (quoting Memco Stores, Inc., 348 S.E.2d at 231).
According to the plaintiff in the instant case, Ripley's failure to utilize a product called "Spill Magic" in cleaning up the spill constituted an improper cleaning method that resulted in the floor's continuing wetness after it was mopped. This situation, Eure contends, imputes to Kroger constructive notice of the hazardous condition under the rule in Austin. However, based on the above analysis, in which the court determines that Eure has pointed to other evidence to create a genuine issue of material fact on the issue of notice, the court need not reach Eure's argument related to Austin.

9

which it had notice. In the instant case, the defendant reacted to the hazardous condition by mopping up the spill and placing a large yellow warning cone in the middle of the spill area.

Eure argues that, under the circumstances of this case, placing a single cone in the middle of a liquid spill that originally spanned an area as large as two tables constituted an inadequate warning of the hazardous condition. In support of this argument, Eure cites Casas v. Wal-Mart Stores, Inc., 201 F.3d 435, 1999 WL 999434 (4th Cir. 1999) (unpublished table decision). The plaintiff in that case slipped and fell on a wet carpet. Id. at *1. The parties did not dispute that the defendant provided some warning about the wet carpet; however, as the Fourth Circuit observed, the primary issue was "whether the warning given was adequate under the circumstances." Id. at *2. The plaintiff testified that she did not see, until after her fall, a "Caution, wet floor" sign that had been placed approximately twelve feet from where she fell. Id. However, the defendant's employees offered conflicting testimony as to the number, location, and type of warnings that the defendant had posted. Id. In applying North Carolina law, which mirrors Virginia law with respect to the liability of premises owners for hazardous conditions, the Fourth Circuit reversed the district court's grant of summary judgment, explaining that "genuine issues of material fact arise as to the number, location, and adequacy of the warnings given by defendant." Id. at *3.

The facts in Casas, however, are distinguishable from the facts in the instant case. The video recording in this case clearly establishes that there was one warning cone placed in the middle of the spill area. Hence, unlike in Casas, there is no genuine issue of material fact in this case as to the number or location of the warnings given by Kroger. Furthermore, while the evidence in Casas suggested that the warning sign stood approximately twelve feet from the location of the fall, the video in this case illustrates that the large yellow warning cone stood only several feet from where Eure fell.

10

Case 7:11-cv-00190-GEC   Document 26   Filed 03/15/12   Page 10 of 13   Pageid#: 458

The court in this case believes that the defendant breached no duty owed to Eure. As stated above, Kroger owed Eure only a "duty to exercise ordinary care toward her as its invitee upon its premises." Colonial Stores Inc., 125 S.E.2d at 190. In carrying out this duty, ordinary care required Kroger

> to have the premises in a reasonably safe condition for [Eure's] visit; to remove, within a reasonable time, foreign objects from its floors, which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn [her] of the unsafe condition if it was unknown to her, but was, or should have been, known to [Kroger].

Id. The facts of this case demonstrate that the defendant discharged this duty within the parameters established by the relevant standard of care—after becoming apprised of the existence of a spill, the defendant mopped the area and placed a large yellow warning cone in the middle of the spill area. That was all that ordinary care required of Kroger as a premises owner. See, e.g., Scott v. Wal-Mart Stores E., Inc., Civil Action No. 2:07cv41KS-MTP, 2008 WL 346096, at *4 (S.D. Miss. Feb. 6, 2008) ("The admissible evidence indicates that the defendant used reasonable care in cleaning up the area around the ice cooler after loading it and then placed a warning sign in the area to alert customers to unseen hazards. That is all that is required of a premises owner.").

While the result might have been different if Eure had fallen twelve feet from where the cone was placed, Casas, 1999 WL 999434, at *2, those are not the facts in this case—instead, Eure fell only several feet away from where the cone stood. Furthermore, she concedes that she did not see the large yellow warning cone before she fell despite the fact that she had walked by the cone at least four times prior to her fall.[4] In Great Atlantic & Pacific Tea Co. v. Rosenberger,

---

[4] The plaintiff also argues that the placement of only one cone constituted an inadequate warning because the plaintiff's attention was diverted from the cone by distracting displays that the defendant had positioned around its store and by the fact that the store had recently moved the location of certain grocery items. While the plaintiff correctly argues that the diversion of a person's attention is a factor that a court may consider in some slip-and-fall cases, the facts of this case are not amenable to such an argument. The plaintiff had walked by the warning cone at

11

124 S.E.2d 26 (Va. 1962), a customer dropped a bottle of liquid starch on a store's floor, causing the starch to pool over a four- to five-foot area. Id. at 27. The store manager immediately posted a store employee at the site of the spill to guide customers around the pool. Id. When the plaintiff approached the spill area, she looked behind her to ensure that her grandson was following her and, while looking back, slipped and fell on the pool of starch. Id. At the time of her fall, the plaintiff did not see the employee stationed next to the starch, who was engaged in directing a young child around the pool. Id. Based on these facts, the Supreme Court of Virginia reversed the jury's verdict in favor of the plaintiff, and ordered that judgment be entered in favor of the defendant. Id. at 28. The court stated:

> There is, therefore, no evidence in the record to show that the defendant was negligent. But the evidence is without conflict that the reason the plaintiff did not see . . . the guard directing the child around [the pool of starch] was because she was carelessly inattentive to her own safety, not because of something which the defendant failed to do.
> If we adopt the view of this case which the plaintiff urges upon us, we would then place the defendant in the position of an insurer of the plaintiff's safety. It may be well to say, as we have often said before, that such is not the law in this type of case.

Id. Similarly, the court in the instant case believes that, even when viewing the evidence in a light most favorable to the plaintiff, there is no evidence in the record to show that Kroger was negligent under Virginia law—it satisfied its duty of ordinary care by mopping up the spill and placing a warning cone only several feet from where Eure later slipped and fell. To require anything further of the defendant would transmute Kroger, as a premises owner, into an insurer of its invitees' safety. See Franconia Assocs., 463 S.E.2d at 672 ("The owner of premises is not an insurer of his invitee's safety. Rather, the owner must use ordinary care to render the premises reasonably safe for the invitee's visit.").

---

least four times before she slipped and fell. (Docket No. 18-2.) She further acknowledged in her deposition that she enjoyed an unobstructed view down the middle of the large main aisle where the cone was placed. (Docket No. 18-1 at 31–32.) Additionally, Eure stated that she had previously seen warning cones in a Kroger store and recognized that they signaled that customers should exercise caution in traversing the area of the cone. (Id. at 21–23.)

12

Case 7:11-cv-00190-GEC   Document 26   Filed 03/15/12   Page 12 of 13   Pageid#: 460

## III.   Conclusion

As explained above, the record reveals no genuine issue of material fact regarding the defendant's lack of negligence.  Accordingly, the court will grant the defendant's motion for summary judgment.  The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER**:  This 15th day of March, 2012.

                                             */s/   Glen E. Conrad*
                                             Chief United States District Judge